IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Percy E. Pluid,<br><br>        Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,[1]<br><br>        Defendant. | CV 12-65-M-DLC-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

        Plaintiff Percy Pluid brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

        Pluid protectively filed his application for benefits on September 4, 2008, alleging he became disabled on February 12, 1999 due to high blood pressure, a rotator cuff injury and problems with his feet and hips. Tr. 170, 229, 257. Pluid's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this case.

PAGE 1

application was denied initially and on reconsideration. Tr. 95, 96. After an administrative hearing at which Pluid appeared with counsel, an Administrative Law Judge found that Pluid was not disabled at any time from his alleged onset date through December 31, 2004, the date he was last insured.[2] Tr. 30. The Appeals Council denied Pluid's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-6. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Pluid was 39 years old on the date he alleges he became disabled in 1999, and 45 years old when his insured status expired in 2004. Tr. 229.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

---

[2] To qualify for disability insurance benefits, Pluid had to establish that he was disabled on or before December 31, 2004, the date he was last insured for disability purposes. Tr. 229. In other words, Pluid had to establish that his impairments prevented him from performing any substantial gainful activity for twelve consecutive months beginning on or before that date. *See Flaten v. Sec'y. Health and Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995); *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991).

PAGE 2

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

**II.     Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

PAGE 3

five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Pluid had not engaged in substantial gainful activity during the period between his alleged onset date in February 1999 and the expiration of his insured status in December 2004. Tr. 22. The ALJ found at step two that Pluid had the following severe impairments through the date last insured: "crush injury to the right foot on February 21, 1999, secondary to being stepped on by a 1-ton cow; status post excision of fracture fragment of the right medial cuneiform on June 11, 1999; and, status post arthrodesis of the right navicular medial cuneiform joint on September 21, 2000, due to periarticular debris and degenerative changes of the joint." Tr. 22.

At step three, the ALJ determined that, through the date last insured, Pluid did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 24. The ALJ also found that while Pluid's medically determinable impairments could reasonably have been expected to produce the symptoms he alleged, his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not entirely credible." Tr. 26.

The ALJ next determined that, through the date last insured, Pluid retained the residual functional capacity to perform a limited range of light work. Tr. 24.

PAGE 5

Although the ALJ found this meant Pluid could not have returned to his past relevant work as a ranch hand, which was categorized as heavy work, he concluded that were a significant number of jobs in the economy that Pluid could have performed through his date last insured, including unskilled light level work as a small products assembler, solderer, driver/carrier or escort vehicle driver. Tr. 29-30.

## A. Severe Impairments

Pluid argues the ALJ erred by not including a rotator cuff injury, obesity degenerative disc disease, and cardiac disease among the list of his severe impairments. For support, Pluid points to a December 9, 2009, treatment note from treating physician Dr. Sarah Robinson that refers to Pluid's obesity, rotator cuff syndrome, and idiopathic cardiomyopathy. Tr. 438. But Dr. Robinson's notes post-date the expiration of Pluid's insured status by nearly five years. There is no indication that Dr. Robinson ever saw Pluid during the relevant time period. As the ALJ recognized, Pluid may have developed impairments after "his date last insured that would qualify as 'severe' impairments, [but] those impairments were not diagnosed and/or treated" until well after his date last insured. Tr. 23-24. Because they did not relate at all to the relevant time period, the ALJ was not required to consider Dr. Robinson's notes from December 2009 when evaluating

PAGE 6

the severity of Pluid's impairments between and February 1999 and December 2004.

Pluid also points to six pages of medical records generated during his stay in the Montana State Prison from 2001 to 2006 that he claims show he suffered from additional severe impairments. Tr. 500, 502, 506, 508, 512, 531. Pluid submitted these records to the Appeals Council in support of his request for review, which means the ALJ did not have any of these records before him at the time of his decision. The Appeals Council considered all of the records from Montana Sate Prison ("MSP"), but found they did not provide a basis for changing the ALJ's decision. Tr. 1-2.

The Ninth Circuit has made clear that the Court may consider additional evidence submitted to the Appeals Council for purposes of determining "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Commissioner of Social Security*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)). To the extent the MSP records relate to the relevant time period, they do not suggest that Pluid suffered from any additional impairments that would have significantly limited his ability to perform basic work activities. Pluid simply string cites to these six pages of records, and fails to explain how

PAGE 7

they support his theory that he suffered from a disabling rotator cuff injury, obesity, degenerative disc disease, or cardiac disease. *See* 20 C.F.R. § 416.908 (The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings). Having reviewed those materials, the Court is satisfied that they do not provide a basis for changing the ALJ's decision. The ALJ's step-two assessment is supported by substantial evidence of record.

### B. Worn-Out Worker Rule

Pluid argues the ALJ erred by not considering whether he was disabled as a worn-out worker under 20 C.F.R. § 404.1562(a), which provides as follows:

> If you have done only arduous unskilled physical labor. If you have no more than a marginal education ... and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) ... we will consider you unable to do lighter work, and therefore, disabled.

To qualify as a worn-out worker under this section, "a claimant must: 1) have only a marginal education; 2) have at least thirty-five years of work experience performing arduous, unskilled physical labor; and 3) be unable due to a severe impairment to return to such labor." *Walston v. Sullivan,* 956 F.2d 768, 771 (8th Cir. 1992). The Commissioner concedes that Pluid has only a marginal

PAGE 8

education, but argues he has not met the regulation's 35-year work requirement. The Commissioner is correct.

Pluid was 45 years old when his insured status expired on December 31, 2004. To meet the worn-out worker rule's 35 year requirement, Pluid would have to show that he began performing arduous physical labor by the age of 10. Pluid testified that he finished sixth grade, but dropped out of school during the seventh grade to work on his father's ranch. Tr. 48, 62. Presumably, Pluid would have been more than ten years old by the time he began seventh grade. Also, Pluid was incarcerated for five years beginning in May 2001, during which time he was clearly not working as a ranch hand. Pluid has not shown that he engaged in arduous physical labor while in prison. In fact, the record reflects that Pluid stopped working as ranch hand in February 1999 at the age of 39 – which is when he alleges he became disabled. Tr. 231, 280. Pluid thus stopped working several years short of the 35-year mark.

Notably, Pluid has not submitted a reply brief and so makes no attempt to show otherwise in response to the Commissioner's motion for summary judgment. Although Pluid provided the Appeals Council with letter from his sister indicating that he began doing chores on the family ranch at the age of six,[3] he attended

---

[3] Tr. 305.

PAGE 9

school through the sixth grade and so could not been performing arduous labor on a full time basis beginning when he was six years old. Pluid has not met his burden of showing that he satisfied the criteria necessary for purposes of qualifying as a worn-out worker.

To the extent Pluid argues the Appeals Council erred by not specifically addressing the letter from Pluid's sister, he is mistaken. *See Taylor,* 659 F.3d at 1232. There is nothing in the letter that would have provided a basis for changing the ALJ's decision, which is supported by substantial evidence.

### C. Medical Opinions

Pluid next argues the ALJ failed to adequately explain why he did not give more weight to the opinion of his treating physician, Dr. Iwersen.

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Iwersen first began treating Pluid in 2008, approximately four years

PAGE 10

after his date last insured. In September 2009, Dr. Iwersen indicated by checkmark in response to a written question presented by Pluid's attorney that Pluid "could not have performed substantial gainful activity from the time of disability to present." Tr. 339-40. And in February 2010, Dr. Iwersen completed a medical source statement form limiting Pluid to a range of sedentary work. Tr. 27, 458-62. Pluid maintains that the ALJ erred by not giving Dr. Iwersen's opinions more weight.

As the ALJ noted, however, Dr. Iwerson's February 2010 opinion "was completed more than 5 years after [Pluid's] insured [status] expired and [did] not relate back to the relevant time frame at issue in this case." Tr. 27. Although Dr. Iwersen's presumably reviewed Pluid's medical records, he did not begin treating Pluid until 2008. There is nothing on either of the forms that Dr. Iwersen completed suggesting that he intended on giving a retrospective assessment of Pluid's functional abilities as they existed between 1999 and 2004. The ALJ also noted that Pluid had "significantly more limitations in 2010" when Dr. Iwersen was treating him than he did during the relevant time period. Tr. 27. The ALJ permissibly discounted Dr. Iwersen's opinion because he was not familiar with Pluid's condition between 1999 and 2004. Tr. 27.

Instead of crediting Dr. Iwersen's opinions, the ALJ reasonably relied on

PAGE 11

the opinions of those medical care providers who were familiar with Pluid's condition during the relevant period. In February 1999, Pluid suffered a crush injury to his right foot when a cow stepped on him. Tr. 406. Pluid had two surgeries as a result. Tr. 418-19, 381-83. Between 1999 and 2001, Pluid's treating providers restricted him at times from ranch hand work, but found him capable of performing sedentary work. Tr. 277-79, 360-63, 405, 423. Pluid reported to treating physician and surgeon Dr. David Bruce in September 1999 that he was working 80 hours a week, frequently going up and down ladders, and "only experiencing occasional discomfort...." Tr. 423. And by July 2001, treating orthopedic surgeon Dr. Glenn Jarrett stated that Pluid could return to his ranch hand work, as tolerated. Tr. 359. The ALJ reasonably relied on these records and others like them when evaluating Pluid's ability to work between 1999 and 2004, instead of Dr. Iwersen's opinions.

### D.     Credibility

Pluid also argues the ALJ failed to cite sufficiently clear and convincing reasons for discrediting his testimony.

The ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

PAGE 12

1993)).  To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  *Smolen*, 80 F.3d at 1284.  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ actually found that Pluid's "testimony about his degree and duration of pain symptoms concerning his right foot [was] generally well supported by the objective medical evidence in the record."  Tr. 28.  While the ALJ thus accepted much of what Pluid had to say, he nonetheless found there was "no evidence [that Pluid's] right foot symptoms would have presented him from performing work activities within" his residual functional capacity "during the time period from his alleged onset date through his date last insured." Tr.  28.  While it would not have been appropriate for the ALJ to discredit Pluid's testimony based entirely on lack of objective medical evidence, the fact that his doctors found him capable of working during the relevant period was a legitimate factor for the ALJ to consider in his credibility analysis.  *See e.g. Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681

PAGE 13

(9th Cir. 2005).

The ALJ cited several other reasons for finding Pluid's testimony less than entirely credible. For example, the ALJ noted that while Pluid claimed he was unable to work on a full time basis after February 1999, he reported to treating physician Dr. David Bruce in September found that was working 80 hours a week, was frequently going up an down ladders, and was only experiencing occasional discomfort. Tr. 25, 423. And while Pluid claimed he was disabled after February 1999, the ALJ noted that he "testified he could lift bales of hay and could lift a couple of hundred pounds during the time period at issue." Tr. 27, 77. The ALJ also found it significant that Pluid was not "taking any medications in June 1999 when he saw cardiologist Dr. Alan Williams" and "was not entirely compliant with prescribed medical treatment for his right foot," in that he did not consistently attend his physical therapy appointments. Tr. 27, 345, 410, 362. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment").

Finally, the ALJ found that Pluid's testimony was less than entirely reliable because he stated that he lived with his parents and helped them with chores in 2004 and 2005, when in fact he had been incarcerated during that time period. Tr.

26, 78-83.

These were sufficiently clear and convincing reasons for rejecting Pluid's testimony to the extent he complained of disabling limitations after February 1999.

### E.     Duty to Develop the Record

Pluid argues the ALJ failed to fully develop the record because he did not investigate whether he satisfied the criteria for presumptive disability based on mental retardation as set forth in Listing 12.05C

It is well-established that an ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). That duty is heightened where a claimant alleges disability based on a mental impairment. *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (noting that duty to develop the record is heightened where the claimant has a mental impairment). In either case, however, the ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

To meet or equal Listing 12.05C, Pluid would have to prove that he experiences "deficits in adaptive functioning" with an onset prior to age 22, that

PAGE 15

he has an IQ of between 60 and 70, and that he has another impairment imposing an additional and significant work-related limitation of function. Listing 12.05 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

Nothwithstanding the fact that he was represented by counsel, Pluid did not raise this issue in front of the ALJ. He did not point to any evidence that he even arguably satisfied the requisite criteria, and has made no such showing before the Court. Although Pluid dropped out of school in the seventh grade, there is nothing in the record suggesting that he did so because of mental incapacity. To the contrary, Pluid explained he left school to help on father's ranch. There is no indication that any of his medical care providers ever suggested that Pluid suffered from mental retardation or suggested that he get IQ testing.

Because the record contained sufficient evidence for the ALJ to reach a decision and was not ambiguous, the ALJ's duty to fully develop the record was not triggered.

### F. Vocational Expert Testimony

Finally, Pluid argues the ALJ's hypothetical to the vocational expert was flawed because it did not incorporate all of his alleged limitations. But because the ALJ properly discredited Pluid's testimony, he was not required to include all of the limitations to which he testified. *See Magallanes v. Bowen*, 881 F.2d 747,

PAGE 16

756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). Substantial evidence of record supports the ALJ's assessment of Pluid's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Therefore,

IT IS RECOMMENDED that Pluid's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's decision is affirmed.

DATED this 20th day of March, 2013

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge